INTERNATIONAL TRANSPORTATION ASSOCIATION, Appellee, v. DES MOINES MORRIS PLAN COMPANY, Appellant.

No. 41362.

NOVEMBER 15, 1932.

Parsons & Mills, for appellant.

E. A. Lingenfelter, for appellee.

WAGNER, J.—It is conceded that the appellee is a foreign stock corporation, organized under the laws of the state of Maryland, with its principal place of business in Washington, D. C. It is also conceded that it had not complied with the provisions of Chapter 386 of the 1927 Code of Iowa in the procurement of a permit to do business in this state.

The appellant contends that the contract upon which suit was brought was made in this state and, relying upon Section 8427, Code 1927, that the appellee cannot maintain the action in the courts of this state. Section 8427, Code 1927, provides:

"No foreign stock corporation doing business in this state shall maintain any action in this state upon any contract made by it in this state unless prior to the making of such contract it shall have procured such permit."

The questions for determination are: (1) Was the contract upon which suit was brought made in this state? and (2) Was the plaintiff corporation "doing business in this state" within the meaning of the statutory law?

The appellee is engaged in publishing what is known in the record as "Baedeker's International Trade Developer." In June, 1929, the plaintiff mailed to the defendant at its post-office address in Des Moines, the following offer:

"The International Transportation Association offers to prepare and publish in future editions of their Trade Developer an announcement for the undersigned to occupy approximately eight square inches made up from acceptable data furnished below. The agreed price for this publicity is One Hundred ($100.00) Dollars—U. S. Currency—a year payable by the advertiser to the International Transportation Association, its assignees or successors, on delivery of one copy of each year's edition containing this service, with bill and copy of our accepted offer attached thereto. Also that this order is for the editions of 1930-1931 and thereafter, but if received too late for the 1930 edition then for the 1931-1932 editions. In either event, this order shall continue in force for subsequent annual editions until cancelled by registered notice from the advertiser and

delivered before January 1st preceding date of subsequent editions.

"Typographical errors in this advertising service to be limited to 25 per cent of the year's charges as maximum damages. All conditions of this offer are recorded hereon, and its acceptance constitutes a complete irrevocable contract for the first two operative years because of the 20 per cent reduction off the one-year rate."

The appellant accepted the offer in the following language:

"The undersigned has read and accepts the above offer to prepare from the data furnished herewith an announcement, descriptive of our activity (to conform with publisher's requirements, space available, also style of presentation) and publish the same in future issues of their Baedeker's International Trade Developer."

This acceptance was duly signed by the appellant-corporation, by its president, and forwarded by mail to the appellee at its address. Appellee's action is based upon the contract as constituted by the aforesaid offer and acceptance, and it asks to recover the sum of $200.00 for the advertising in the publication for the years 1930-1931.

It is the appellant's contention that the aforesaid contract is a contract made in the state of Iowa. Its contention must be upheld at this point. See Tegler & Co. v. Shipman, 33 Iowa 194; Tuttle v. The Iowa State Traveling Men's Association, 132 Iowa 652. It will be noted from the foregoing that appellee's offer was sent to the appellant by mail, but that nothing was suggested by the appellee as to how the answer or acceptance, if any, should be communicated to it. It is elementary that an offer communicated through the mail cannot constitute a contract until it is accepted. But, when such offer is accepted and the acceptance thereof, or a letter containing the acceptance, is placed in the mail, properly stamped and directed to the one making the offer at his address, the contract as specified in the offer is then complete. In that event, the contract is made where the offer is accepted. Where an offer is made by mail and nothing is contained in the offer as to how the acceptance thereof shall be communicated, it will be implied that an acceptance shall be communicated by mail to the one making the offer. In Tegler & Co. v. Shipman, 33 Iowa 194, this court declared:

"Where an order or offer is made by letter, it does not consti-

tute a contract until it is accepted. When it is accepted and the letter containing the acceptance is placed in the mail, the contract as specified in the order or offer is complete, and it is very plain, upon principle, that the contract is made where it is accepted, and not where the offer was made * * *."

In Tuttle v. Iowa State Traveling Men's Association, 132 Iowa 652, we said:

"But was authority to respond by mail to be implied? The request to communicate an acceptance by mail may be inferred (1) where the post is used to make the offer and no other mode is suggested, and (2) where the circumstances are such that it must have been contemplated that the post would be made use of in returning an answer."

Under the principle enunciated by the foregoing authorities, it must be held that the contract, consisting of appellee's offer and the acceptance by appellant, which latter was properly mailed at Des Moines, directed to the appellee at its address without the state of Iowa, constituted a contract made in this state.

Although the contract upon which suit is brought is one made in this state, the appellant cannot succeed in its contention unless it is shown by the record that the appellee-corporation is "doing business in this state" within the meaning of Section 8427, Code 1927, hereinbefore quoted. The appellee-corporation was at all times without the state. Everything done in the performance of its contract with the appellant was done without the state of Iowa; there was no requirement that any portion of it be performed within the state. The question as to what constitutes doing business in this jurisdiction by a foreign corporation not authorized to do business herein was fully discussed in Burnham Mfg. Co. v. Queen Stove Works, 214 Iowa 112; American Asphalt Roof Corporation v. Shankland, 205 Iowa 862. The appellant cites no authority holding that the mere making within this state by a foreign corporation of a contract, such as the one involved in this litigation, constitutes "doing business in the state" within the purview of the statutory law. The universal holding of the courts in jurisdictions which have passed upon this question is that a foreign corporation which is engaged in publishing a magazine, directory or newspaper is not, within the meaning of the statute similar to ours, doing business in a state by soliciting or entering into contracts for advertisement

to be published therein. See Mertins v. Hubbell Pub. Co. (Ala.), 67 So. 275; Beard v. Union & American Publishing Company, 71 Ala. 60; Journal Printing Company v. Inter-Ocean Newspaper Company, 167 Ill. App. 274; C. J. Vol. 14-A, page 1281, and cases therein cited. In Mertins v. Hubbell Pub. Co. (Ala.), 67 So. 275, the court said:

"Plaintiff's proof of its case was furnished in evidence, tending to show that it published a legal directory in which appeared, according to contract, a card advertising defendant's business. These facts were not denied, and on them, without more, plaintiff was entitled to judgment for the contract price. * * * The demurrers to those special pleas, which undertook to set up by way of defense that plaintiff, being a foreign corporation, had not complied with the statutes of this state made and provided for cases in which such corporations do business in this state were properly sustained. Nothing is alleged which would make the contract sued upon or the transaction out of which plaintiff's demand arose the doing of business in this state * * *."

In Journal Printing Company v. Inter-Ocean Newspaper Company, 167 Ill. App. 274, the court held that the mere signing of a contract in Illinois does not constitute doing business in the state in violation of the statutory law, the court saying:

"* * * even if the contract was signed in Illinois that does not constitute doing business in this state in violation of the statute."

In accord with the universal holding of the courts, we hold that the entering into the contract by the appellee-corporation with the appellant in the state of Iowa does not constitute "doing business in this state" within the purview of the statutory law.

For the foregoing reasons, the judgment of the trial court is correct, and the same is hereby affirmed.—Affirmed.

STEVENS, C. J., and FAVILLE, DE GRAFF, and ALBERT, J.J., concur.